UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.   CASE NO: 8:23-cr-474-CEH-UAM

JIMMIE C. GARDNER

## ORDER

This matter comes before the Court on Defendant Jimmie Gardner's Motion to Dismiss (Doc. 85), which the Government opposes (Doc. 90). Gardner is charged with a single count of sex trafficking of a minor under 18 U.S.C. § 1591, based on the allegation that he solicited a minor to engage in sexual conduct in exchange for money. In the motion to dismiss, he argues that the factual allegations do not establish the type of conduct Congress intended to target in § 1591. As applied, he asserts, the statute unconstitutionally exceeds federal authority and infringes upon state sovereignty.

Upon review and consideration, and being fully advised in the premises, the Court will deny the motion to dismiss.

## BACKGROUND

The affidavit in support of the Complaint alleges that, on November 17, 2023, Gardner pulled his car over next to the 16-year-old minor victim ("MV"), a stranger, and asked if she wanted to "chill." Doc. 1 at 3 ¶ 5. The MV agreed, and, after stopping at a McDonald's drive-thru, Gardner drove them to the hotel where he was staying. *Id.* ¶ 6. When they went inside his hotel room, he asked the MV if she would engage

in sex acts for $100.00. *Id.* ¶ 7. He had previously asked if she wanted to "do something for money"; she had declined and told him her age. *Id.* ¶ 6. In the room, the MV initially agreed to the offer but changed her mind after the sexual conduct began. *Id.* ¶¶ 8-10. Gardner then took back the money and told her to leave. *Id.* ¶ 10. When the MV asked him to drive her back to where he picked her up, he declined and they argued. *Id.* The MV began yelling, and Gardner pushed her onto the bed and placed his hands around her neck while telling her to be quiet. *Id.* ¶ 11. The MV ran out of the room and notified law enforcement. *Id.* ¶ 12.

Gardner was arrested by the Tampa Police Department and charged with Lewd or Lascivious Touching of a Minor and Battery under Florida Statutes § 794.051(a). *Id.* ¶ 18. On December 19, 2023, a federal grand jury returned an indictment for one count of Sex Trafficking of a Minor under 18 U.S.C. § 1591(a).

Gardner now moves to dismiss the indictment. Doc. 85. He argues that the allegations, viewed in the light most favorable to the prosecution, establish a single act of soliciting prostitution without the use of force. *Id.* at 1. Gardner cites legislative history to contend that 18 U.S.C. § 1591 was intended to combat the type of forced human trafficking that involves international borders and sophisticated criminal enterprises. *Id.* at 4-6. Although the statute is written broadly enough to encompass the allegations against him, he argues they are not the type of conduct § 1591 intended to target. *Id.* at 1, 4, 6. Gardner relies on *Bond v. United States*, 572 U.S. 844 (2014), for the proposition that a federal statute that reaches purely local conduct, contrary to the

legislative intent, violates basic principles of federalism and is therefore unconstitutional as applied. *Id.* at 7-11.  He argues that because the act he is accused of committing is purely local conduct that is already well-regulated by the state of Florida, his prosecution under § 1591 exceeds federal authority. *Id.* at 10-11, 13-14.

Responding in opposition, the Government argues that this case is controlled by *U.S. v. Evans*, 476 F.3d 1176 (11th Cir. 2007), in which the Eleventh Circuit rejected a Commerce Clause challenge to a § 1591 conviction for prostitution activities that occurred within a single state. Doc. 90 at 5-7.  Further, the Government distinguishes *Bond* because the federal statute at issue in that case lacked an interstate or foreign commerce element. *Id.* at 7-8.  In contrast, § 1591 uses the broad jurisdictional language of "affecting interstate or foreign commerce," demonstrating the congressional intent to exercise the broadest permissible exercise of Commerce Clause power and reach even purely local crimes. *Id.* at 9-10.  The Government also points out that Congress amended § 1591 to add "patronizes or solicits" to clarify that it covers patrons of commercial sex acts like Gardner. *Id.* at 10-12.

## DISCUSSION

18 U.S.C. § 1591 provides:

> (a) Whoever knowingly—
>
> (1) in or affecting interstate or foreign commerce…recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person…
>
> knowing, or…in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or

> any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

Although Gardner does not appear to dispute that his alleged conduct falls within a plain reading of § 1591(a), *see* Doc. 85 at 4, he relies on *Bond v. United States*, 572 U.S. 844 (2014), to argue that the statute should be construed to avoid criminalizing his purely local conduct, because there was no clear congressional intent to do so. For the reasons discussed below, his argument is unavailing.

The federal government "possesses only limited powers," while "the States and the people retain the remainder." *Bond*, 572 U.S. at 854; U.S. Const. Amend. X. Congress may exercise only the enumerated powers contained in the Constitution; a general police power is not among them. *Bond*, 572 U.S. at 854 (citations omitted). As a result, "[a] criminal act committed wholly within a State 'cannot be made an offence against the United States, unless it have some relation to the execution of a power of Congress, or to some matter within the jurisdiction of the United States.'" *Id.*, quoting *United States v. Fox*, 95 U.S. 670, 672 (1878).

One enumerated power of Commerce is the regulation of interstate commerce. U.S. Const. art. I, § 8. Pursuant to its commerce power, Congress is permitted to regulate: (1) "the use of the channels of interstate commerce," (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come from only intrastate activities," and (3) "those

activities having a substantial relation to interstate commerce, *i.e.* those activities that substantially affect interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558-59 (1995) (citations omitted).

Under the third *Lopez* category, Congress may regulate "purely local activities," provided they "are part of an economic 'class of activities' that have a substantial effect on interstate commerce." *Gonzales v. Raich*, 545 U.S. 1, 17 (2005). Congress's power "is not limited to regulation of an activity that by itself substantially affects interstate commerce, but also extends to activities that do so only when aggregated with similar activities of others." *Nat'l Federation of Independent Business v. Sebelius*, 567 U.S. 519, 549 (2012). A statute's use of the phrase "affecting commerce" pursuant to this category "ordinarily signals the broadest permissible exercise of Congress's Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).

The Eleventh Circuit rejected an as-applied challenge to 18 U.S.C. § 1591(a) pursuant to the third *Lopez* category in *United States v. Evans*, 476 F.3d 1176 (11th Cir. 2007). It was undisputed in *Evans* that the defendant's conduct, enticement of a minor to commit prostitution, occurred solely in Florida. *Id.* at 1179. But the court emphasized that § 1591 was enacted as part of the Trafficking Victims Protection Act of 2000 ("TVPA"), which is part of a comprehensive regulatory scheme to criminalize and prevent human trafficking for commercial gain. *Id.* The defendant's actions "had the capacity[,] when considered in the aggregate with similar conduct by others, to frustrate Congress's broader regulation of interstate and foreign economic activity,"

5

because they "contribute[d] to the market that Congress'[s] comprehensive scheme seeks to stop." *Id.* Moreover, the defendant used hotels that served interstate travelers and distributed condoms that traveled in interstate commerce, demonstrating that his conduct "substantially affected interstate commerce." *Id.* The court therefore found that his conduct satisfied the "affecting interstate…commerce" element of § 1591(1)(a)(1). *Id.* at 1180.

Here, unlike the defendant in *Evans*, Gardner does not rest his challenge on the Commerce Clause.[1] Rather, he relies on the reasoning of *Bond v. United States*, 572 U.S. 844, 855 (2014). In *Bond*, the Supreme Court found that a statute criminalizing the use of chemical weapons, enacted pursuant to an international treaty against chemical warfare, did not cover the defendant's conduct in spreading a chemical substance around the outside of her romantic rival's home to try to give her a rash. 572 U.S. 844. Although a plain reading of the statute appeared to prohibit the defendant's actions, the Court concluded that such an interpretation "would dramatically intrude upon traditional state criminal jurisdiction, and we avoid reading statutes to have such reach in the absence of a clear indication that they do." *Id.* at 856-57. In reaching this conclusion, the Court found that the description of Bond's crime as involving a "chemical weapon" was strained, rendering the seemingly-broad wording of the

---

[1] *But see* Doc. 85 at 13 ("Pursuant to *Bond*, applying 18 U.S.C. § 1591 to the Defendant's actions infringes upon state sovereignty and exceeds federal authority under the Commerce Clause."). To the extent Gardner makes an as-applied challenge to § 1591 under the Commerce Clause based upon the purportedly local nature of his conduct, this Court is bound by *Evans* to reject it.

statute ambiguous. *Id.* at 860-62.  Without a "clear indication" that Congress intended "to define as a federal crime conduct readily denounced as criminal by the States," it was appropriate to interpret the statute more narrowly, in a manner that excluded Bond's conduct. *Id.* at 865-66.

Just as the *Bond* Court found that the chemical warfare statute was not intended to reach Bond's purely local conduct, Gardner argues that Congress did not intend to reach purely local prostitution activities when it enacted the TVPA. Doc. 85 at 10-11. He relies on legislative history describing the type of international sex trafficking that often involves coercion, violence, and sophisticated criminal enterprises to contend that one instance of lewd and lascivious conduct is not "the type of trafficking that caused congressional concern[.]" Doc. 85 at 4-6.

Contrary to Gardner's argument, however, there are "clear indication[s]," *see Bond*, 572 U.S. at 860,  that Congress intended § 1591(a) to cover his alleged conduct of soliciting a minor for prostitution.  Section 1591 is therefore unlike the statute at issue in *Bond*, which lacked a "clear statement that Congress meant the statute to reach local criminal conduct." *Id.*

This Court agrees with and adopts the analyses of the other courts to address this argument, including *United States v. Renteria*, 84 F.4th 591 (5th Cir. 2023); *U.S. v. Walls*, 784 F.3d 543 (9th Cir. 2015); *United States v. Adamas*, 578 F.Supp.3d 692 (E.D. Penn. Jan. 6, 2022); and *United States v. Groce*, No. 15-cr-078, 2016 WL 10703155 (W.D. Wis. Oct. 20, 2016), vacated on other grounds by 891 F.3d 260, 271 (7th Cir.

2018) (affirming the district court in all other respects). All of these courts have rejected the application of *Bond* to § 1591. Although Gardner dismisses their reasoning as "flawed," Doc. 85 at 13, he does not dispute the legislative history they cite.

The legislative history of the TVPA provides strong evidence that Gardner's conduct of soliciting a minor to commit a commercial sex act is among the types that Congress intended § 1591 to cover. As the Eleventh Circuit recognized in *Evans*, the TVPA was part of a comprehensive regulatory scheme designed to prevent and reduce all forms of human trafficking. *See Evans*, 476 F.3d at 1179. Even local prostitution activities contribute to the global market for commercial sex. *Id.* Indeed, as the *Adams* court detailed, Congress has expressed its intent for the TVPA to prevent domestic trafficking, particularly of minors, on several occasions. *Adams*, 578 F.Supp.3d at 695-698. To this end, § 1591 was expanded in 2015 to add those who patronize and solicit commercial sex to the statute's explicit reach. Pub. L. 114-22, 129 Stat. 227 (2015), § 108. With a stated purpose of "clarify[ing] the range of conduct punished as sex trafficking," the amendment was titled, "Reducing demand for sex trafficking." *Id.*

Moreover, the TVPA identifies inducing a minor to commit a commercial sex act as one of the "severe" forms of trafficking. 22 U.S.C. § 7102(11)(A). Its purpose statement indicates that state criminal laws are inadequate to address severe forms of trafficking:

> Existing legislation and law enforcement in the United States and other countries are inadequate to deter trafficking and bring traffickers to justice, failing to reflect the gravity of the offenses involved. No comprehensive law exists in the United States that penalizes the range of offenses involved in the trafficking scheme.

> Instead, even the most brutal instances of trafficking in the sex industry are often punished under laws that also apply to lesser offenses, so that traffickers typically escape deserved punishment.

22 U.S.C. § 7101(b)(14).[2]

This legislative history is fully consistent with the statute's use of the broadest permissible jurisdictional phrase, "in or affecting interstate or foreign commerce," which "indicates Congress' intent to regulate to the outer limits of its authority[.]" *Renteria*, 84 F.4th at 549 (quotation omitted); 18 U.S.C. § 1591(a)(1); *see also* 22 U.S.C. § 7101(b)(12) (finding that, in the aggregate, "[t]rafficking in persons substantially affects interstate and foreign commerce"); *cf.* 18 U.S.C. § 229 (the statute at issue in *Bond* that does not contain an interstate commerce element). The Court therefore concludes that Gardner's conduct falls squarely within § 1591, as it is written and as it was intended. The motion to dismiss is due to be denied.

Accordingly, it is **ORDERED**:

1. Defendant Jimmie Gardner's Motion to Dismiss (Doc. 85) is DENIED.

**DONE** and **ORDERED** in Tampa, Florida on July 26, 2024.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[2] The procedural history of Gardner's case conforms with this stated purpose. Gardner was originally charged with the state crime of Lewd or Lascivious Touching of a Minor under Fla. Stat. § 794.051(a)—a charge that does not encompass his alleged solicitation of a commercial sex act.

9